UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| MARQUAYLE MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:15-CV-384-TLS |
| | ) | |
| CITY OF FORT WAYNE, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

The Plaintiff, MarQuayle Martin, has sued the City of Fort Wayne pursuant to 42 U.S.C. § 1983, asserting that the City's vehicle impoundment policy violates the Fourth Amendment protection against unreasonable seizures, and violates the Fourteenth Amendment right to due process. The Plaintiff's Complaint is styled as a class action; he seeks to proceed on behalf of himself and other similarly-situated individuals. This matter is before the Court on the Defendant's Motion to Deny Class Certification [ECF No. 9], and on the Plaintiff's Motion to Amend Complaint [ECF No. 16]. According to the Plaintiff, the amendment is necessary to redefine the class, properly allege the law applicable to the substantive claims of the class, allege that the Plaintiff seeks class certification pursuant to all the required elements of Rule 23(a), as well as the requirements of Rule 23(b)(3), and to delete any reference to qualifying the class under Rule 23(b)(2). The Defendant counters that, even if the Complaint is amended, the Defendant's arguments in favor of denying class certification still apply. For the Plaintiff's part, he disagrees with the Defendant's characterization of the legal basis for his claim, and asks that he be allowed to proceed with discovery so he can substantiate his reasons to pursue the action as a class and establish the Rule 23 elements.

## PROCEDURAL POSTURE

According to Rule 23(c)(1)(A), a court "must determine by order whether to certify" a case as a class action "[a]t an early practicable time" after suit is initiated. Generally, the party seeking class certification assumes the burden of demonstrating that it is appropriate, *Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir. 1984), and "[f]ailure to meet any of the Rule's requirements precludes class certification," *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). However, this case is still at the pleading stage, discovery has been stayed (pending a ruling on the Motion to Deny Class Certification), and the Plaintiff has not moved for class certification. Although a defense motion to deny class certification is not the typical manner in which a court is presented with the issue of class certification, the Court is not precluded from considering the question of class certification at this stage. Pursuant to Rule 23(c)(1)(A), "a court may deny class certification even before the plaintiff files a motion requesting certification" and that a court "need not delay a ruling on certification if it thinks that additional discovery would not be useful in resolving the class determination." *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011).

It would be an exceptional case that warranted striking class allegations before discovery had even begun, as Rule 23 is not "a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A court making a class determination must engage in a "rigorous analysis" of the Rule 23(a) factors. *Id.* (quoting *Gen. Elec. Tele. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)); *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001) (explaining that Rule 12(b)(6) standard is not applicable to a decision to certify a class because a "judge should make whatever factual and legal inquiries are necessary under Rule 23" before

deciding whether to allow a case to proceed as a class action). "Most often it will not be 'practicable' for the court" to decide at the pleading stage "to reject a plaintiff's attempt to represent a class." *Hioll v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013); *see also* 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 3:4 (12th ed.) ("[M]otions to strike should not be the norm, but are appropriate when the unsuitability of class treatment is evident on the face of the complaint and incontrovertible facts."). Indeed, a court may abuse its discretion if it does not allow for appropriate discovery before deciding whether to certify a class. *Damasco v. Clearwire Corp.*, 662 F.3d 891, 897 (7th Cir. 2011), *overruled on other grounds by Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015).

In ruling on the Defendant's Motion to Deny Class Certification, this Court will consider whether the Complaint states facts that plausibly suggest that the Plaintiff's claims are amenable to class certification. That is, has the Plaintiff alleged enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the Plaintiff's class allegations. *See, e.g.*, *Carlson v. Northrop Grumman Corp.*, 13 C 2635, 2014 WL 5334038, at *3 (N.D. Ill. Oct. 20, 2014) (melding Rule 8 pleading requirements with Rule 23 requirements to require the plaintiff to establish that he has "satisfied the pleading requirements of rule 8 and 23 based on the information available to him at that time"); *Blihovde v. St. Croix Cnty.*, 219 F.R.D. 607, 614 (W.D. Wis. 2013) (stating that, prior to discovery, when a "defendant[] challenge[s] class certification on the basis of the allegations in the complaint only, the proper standard is the same as a motion to dismiss for failure to state a claim"). Before undertaking this inquiry, the Court must determine which version of the Plaintiff's complaint to consider, the original Complaint or the First Amended Complaint that the Plaintiff has sought leave to file.

Given the liberal standard for allowing amendments to pleadings, *see* Fed. R. Civ. P. 15(a), and the lack of "undue delay, bad faith . . . , [or] undue prejudice to the [Defendant]," *see Foman v. Davis*, 371 U.S. 178, 182 (1962), the Court will grant the Plaintiff's Motion to Amend, and consider the merits of the Defendant's Motion to Deny Class Certification as it pertains to the First Amended Complaint—Class Action [ECF No. 16-1]. Although the Defendant has urged the Court to disallow the amended pleading, the Court does not think that would be an efficient course of action. Both parties have already briefed their certification arguments as if the First Amended Complaint is controlling. For example, the Defendant asserts that certification is not appropriate, even under the First Amended Complaint, because there are no relevant issues of law or fact common to the proposed class (Rule 23(a)(2)) and the Plaintiff's claims are not typical of those of the proposed class member (Rule 23(a)(3)). The Defendant also contends that the Plaintiff cannot satisfy the requirements of predominance and superiority, which are mandatory for Rule 23(b)(3) certification.[1] The Plaintiff has responded to these arguments. In total, the Court has eight briefs before it related to the two pending motions. Granting the Motion to Amend will advance the case without prejudice to either party.

**COMPLAINT ALLEGATIONS**

On June 27, 2014, the Plaintiff was driving his vehicle in Fort Wayne, Indiana, when City of Fort Wayne Police Officers stopped and arrested him. A licensed driver was in the car at the

---

[1] The Defendant's Response in Opposition to Plaintiff's Motion to Amend Complaint also states that the "proposed First Amended Complaint is futile and subject to dismissal." (Def.'s Resp. in Opp'n to Pl.'s M. to Amend Compl. 1, ECF No. 18.) However, the argument portion of the brief does not advance the position that the entire complaint should be dismissed. Rather, as outlined above, the Defendant addresses whether the case can be maintained as a class action even if the allegations of the First Amended Complaint are accepted as true.

time of the stop, and was willing to drive the Plaintiff's car from the scene. The Plaintiff asked that the individual be permitted to drive the car away, but the officers denied his request and arranged for the vehicle to be towed and impounded. The Plaintiff alleges that the officers had no warrant for seizure of the car, no probable cause to search or seize it, and had provided no pre-deprivation notice or hearing to justify the automatic impoundment. He further alleges that the wrongful seizure of his vehicle was the result of the Defendant's unconstitutional policies, practices, procedures, and/or customs governing the seizure and automatic impoundment of vehicles. The Plaintiff alleges that the Defendant has failed to adequately train and supervise its personnel to determine whether seizure and impoundment is appropriate where the owner has consented to allow a present, licensed driver to remove the vehicle from the scene. The Plaintiff brings this legal action to recover for violations of the Fourth and Fourteenth Amendments on behalf of himself and a class of putative class members defined as follows:

> Individuals who from August 17, 2013 until the present time, were subjected to traffic stops by City of Fort Wayne police officers, and had their vehicles immediately seized, towed and impounded without a warrant and the owners' consent, or any legal justification to do so; the vehicle seizures occurred without any pre-deprivation notice and/or hearing prior to the seizure, towing, and impoundment; and City officers failed to permit the vehicle owners to have a licensed driver present at the scene drive the vehicle from the scene.

(First Am. Compl. ¶ 1.)

## ANALYSIS

**A.  Constitutional Claims**

The Plaintiff's primary grievance is that the City of Fort Wayne police officers towed the car he was driving after arresting him during a traffic stop, even though the passenger of the car

could have driven it from the scene. He alleges that this was done pursuant to the Defendant's policy to automatically tow vehicles once the driver is deemed unfit without regard to whether there exists an alternative method of removal, namely, the presence of another licensed driver.

A seizure results if "there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook Cnty. Ill.*, 506 U.S. 56, 61 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). The impoundment of an automobile is a seizure within the meaning of the Fourth Amendment. A seizure conducted without a warrant is per se unreasonable under the Fourth Amendment—subject to a few specifically established and well-defined exceptions. *See Mincey v. Arizona*, 437 U.S. 385, 390 (1978). One such exception, the "community caretaking" function, allows police officers to impound vehicles that "imped[e] traffic or threaten[] public safety and convenience." *South Dakota v. Opperman*, 428 U.S. 364, 368–69 (1976); *see also United States v. Cherry*, 436 F.3d 769, 774 (7th Cir. 2006) (holding that police were justified in towing the arrestee's "hazardously parked car pursuant to their standard policy, in furtherance of their 'community caretaking' function"). Where a decision to impound is not supported by probable cause of criminal activity, it "is only valid if the arrestee is otherwise unable to provide for the speedy and efficient removal of the car from public thoroughfares or parking lots." *United States v. Duguay*, 93 F.3d 346, 352–53 (7th Cir. 1996).

The Defendant argues that because it has a Written Motor Vehicle Tow and Inventory Policy, which sets forth the circumstances under which police may tow a vehicle, the requirements of the Fourth Amendment have been met.[2] It is true that "standardized criteria or

---

[2] Although the Defendant refers to the written policy in its briefing, the Court could not locate a copy of the policy in the record currently before it.

established routine must regulate 'inventory searches.'" *Florida v. Wells*, 495 U.S. 1, 4 (1990). "Among those criteria which must be standardized are the circumstances in which a car may be impounded." *Deguay*, 93 F.3d at 351. However, "[t]he existence of a police policy, city ordinance, or state law alone does not render a particular search or seizure reasonable or otherwise immune from scrutiny under the Fourth Amendment." *United States v. Cartwright*, 630 F.3d 610, 614 (7th Cir. 2010); *see also Thompson v. Vill. of Monee*, 110 F. Supp. 3d 826, 849 (N.D. Ill. 2015) ("The mere existence of a comprehensive policy alone, however, is not sufficient to meet the constitutional requirements of the Fourth Amendment for impound of a vehicle.").

The Plaintiff believes that, after discovery, he will be able to show that the Defendant had a custom or widespread practice of automatically towing and impounding vehicles even when (1) a willing and licensed driver was present on the scene, and (2) the initial stop was for an infraction or minor driving offense that did not require the vehicle to be towed or impounded for evidentiary purposes. If the Plaintiff cannot ultimately prove that the Defendant employed such a policy or custom, then there would be no "course of conduct" for which the Defendant, as a municipality, could be held liable—even if the acts of the individual officers violated the Plaintiff's constitutional rights. *See White v. City of Markham*, 310 F.3d 989, 998 (7th Cir. 2002) (explaining no municipal liability under § 1983 unless a policy or custom of the entity was the "moving force" behind the constitutional deprivation). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible

under § 1983." *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978).[3]

**B.      Requirements for Class Action**

Class actions are intended "to avoid repeated litigation of the same issue and to facilitate prosecution of claims that any one individual might not otherwise bring on her own." *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 433 (7th Cir. 2015). Federal Rule of Civil Procedure 23 governs the certification of class actions in federal court. It allows a member of a class to sue as a representative party on behalf of all the class members if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). If all of these prerequisites are met, a court must also find that at least one of the subsections of Rule 23(b) is satisfied. When certification is sought under subsection (b)(3), as it is here, the proponents of the class must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Defendant challenges whether the Plaintiff can meet the requirements of Rule 23(1), (2), and (3), or Rule 23(b)(3).

---

[3] Moreover, even if the Defendant has such a policy, and it was determined to be unconstitutional, that policy would not cause a deprivation in all circumstances. *See, e.g., Cartwright*, 630 F.3d at 616 (holding that car was not lawfully operable because it did not have functional license plate lamp as required by Indiana law). But that, and other issues going to the merits or to any defenses, are for another day.

1.  *Numerosity*

The Defendant argues that the Plaintiff's "own allegations demonstrate his inability to establish numerosity." (Def.'s Mem. 9, ECF No. 10 (arguing that "[i]f other individuals believe that their vehicles were seized, towed, and impounded after being arrested those individuals are more than capable of pursing litigation on their own behalf, which suggests the potential class is not nearly as expansive as [the Plaintiff] seemingly suggests.").) The Plaintiff admits that discovery will be needed "to flush out the individuals in the class" and sets forth the scope and means of the anticipated discovery. (Pl.'s Resp. 2, ECF No. 24.)

The Court is not persuaded by the Defendant's argument that the Plaintiff cannot proceed with this litigation as a potential class action because, if similar claims existed, the individuals involved would have already pursued litigation. Although this may be true, it is also plausible based on the allegations in the First Amended Complaint that numerous individuals were impacted by the policy that the Plaintiff alleges the Defendant has in place. The Plaintiff has not yet had an opportunity to pursue discovery that would allow him to prove, and the Court to find, that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). If the Plaintiff is unable to satisfy this requirement after completing discovery, the Court will not grant class certification. However, to deny class certification at this stage, without the benefit of any discovery, would be premature.

2.  *Commonality*

Subsection (a)(2) requires the presence of "questions of law or fact common to the class." Fed. R. Civ. P. 32(a)(2). Commonality requires a common contention that is capable of

class-wide resolution, "which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 546 U.S. at 350. "The critical point is 'the need for *conduct* common to members of the class.'" *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (quoting *In re IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599, 602 (7th Cir. 2014)); *see also Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (noting that common questions arise where "the defendants have engaged in standardized conduct towards members of the proposed class"). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek*, 764 F.3d at 756.

The Defendant argues that the proposed class does not have sufficient questions of law or fact in common. It submits that the purported class would be attempting to sue the Defendant for numerous impoundment decisions all at once, which is problematic because each impound decision would require a detailed factual analysis to determine whether it was reasonable under the community caretaking doctrine. The Defendant derives its argument from a case originating in the Central District of California, *Miranda v. Bonner*, No. CV 08-03178 SJO VBKK, 2012 WL 10972131 (C.D. Cal. Jan. 31, 2012). In that case, the court denied class certification for a class defined as follows:

> All vehicle owners whose vehicles were seized and stored even though, at the time of the vehicles' seizure, justification for seizure pursuant to the community caretaking doctrine did not exist; or all vehicle owners who had cars impounded for thirty days pursuant to [Section] 14602.6 where the purpose of the [thirty]-day impound was punishment for alleged crimes.

2012 WL 10972131, at *3. The court found that commonality was lacking because "other than alleging that they have all suffered from a violation of the same statute, Plaintiffs

have not demonstrated that a class-wide proceeding will generate common answers." *Id.* at *5. The court rejected the plaintiffs' argument that the "basic question of whether, and under what circumstances, a seizing agency must allow the car to remain parked or be driven away by a licensed driver is common to all class members." *Id.* It reasoned that the answer to that question "is dependent upon a variety of circumstances and impoundment decisions made for various reasons." *Id.* ("Unless Plaintiffs are able to demonstrate *in fact* that there are common questions of law or fact, simply alleging that Defendants have a custom or policy of unlawfully seizing vehicles is insufficient to support a motion for class certification."); *see also Sandoval v. Cnty. of Sonoma*, Case No. 11-cv-05817-TEH, 2015 WL 468460, at *3 (N.D. Cal. Feb. 3, 2015) ("[W]here the source of authority for impoundment decisions covers a wide range of circumstances, classes consisting of all owners whose vehicles were impounded under that authority do not have a sufficiently common question.").

The decisions in *Bonner* and *Sandoval* align with others where class certification has been denied because the Plaintiff presented no proof of a systematic practice to potentially tie all the claims together. *See, e.g.*, *Wal-Mart*, 564 U.S. at 353 (denying class certification because the plaintiffs did not identify a specific employment practice that tied all their claims together); *Phillips v. Sheriff of Cook Cnty.*, — F.3d —, 2016 WL 3615761, at *12 (7th Cir. July 6, 2016) (finding that the proposed questions did not address a gross and systemic deficiency that would apply class-wide, but concerned a series of individual deliberate indifference claims); *cf. Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015) (identifying the common question whether the defendant had an unofficial policy or practice that required employees to work unclocked overtime hours); *Suchanek*, 764 F.3d at 756 (holding that commonality was

satisfied where the plaintiffs' claims derived from a single course of conduct by the defendant related to the marketing and packaging of a consumer product).

The Plaintiff argues that the class he seeks to represent would not require the individual, case-by-case inquiry that prevented certification in *Bonner* and *Sandoval*. The Court agrees. The Plaintiff's proposed class would include only individuals whose cars were towed under the community caretaking exception, even though a licensed and capable driver remained on the scene after the driver was deemed ineligible to drive.[4] The Plaintiff alleges that the community caretaking exception does not apply in that particular circumstance. He further alleges that the reason police officers decided to tow a vehicle in those instances is owing strictly to the Defendant's policy to automatically tow and impound vehicles when the driver is unable, without consideration of whether another person could have removed it. Factors that are normally germane to considering whether the community caretaking exception applies will not be relevant if a custom or policy caused the unconstitutional seizure. *E.g.*, *Duguay*, 93 F.3d at 353 ("The policy of impounding the car without regard to whether the defendant can provide for its removal is patently unreasonable if the ostensible purpose for impoundment is for the 'caretaking' of the streets.").

The Defendant disagrees with the Plaintiff's premise for the constitutional challenge, arguing that the Fourth Amendment does not require police to provide an arrestee with the option to allow another occupant to operate the vehicle when the driver's "vehicle is seized in connection with the arrest." (Def.'s Mem. 2, ECF No. 10.) This disagreement goes to the merits

---

[4] While the class definition provided in the First Amended Complaint may not be well crafted, neither is it controlling. The Court considers the entirety of the allegations to determine whether they plausibly suggest that a class could be certified.

of the suit. Whether the Defendant has a practice of automatically towing vehicles whenever a driver is arrested without consideration of whether another person on the scene could remove it and, if so, the constitutionality of such a policy, are common questions for which there are common answers. A determination of the truth or falsity of these allegations will resolve an issue that is central to the validity of every potential plaintiff's claim. In other words, the class members are attempting to answer the question, "why was my car towed?" by pointing to towing practices that did not properly fall within the community caretaking exception to the warrant requirement. This is a question that is capable of being answered with "proof at trial through evidence that is common to the class rather than individual to its members." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 818 (7th Cir. 2012). Unlike the cases cited by the Defendant, this case is not about hundreds of impoundment decisions. To the contrary, if the Plaintiff's allegations are believed, it is about the *absence* of any real case-by-case decision making in favor of a policy that automatically resulted in towing.

**3.** *Typicality*

Under Rule 23's typicality requirement, the issue is whether "the named representatives' claims have the same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). The question whether claims are typical of those of the class members he represents is closely related to the commonality inquiry. *Keele*, 149 F.3d at 595. The Seventh Circuit has summarized the typicality analysis as follows:

> A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and her claims are based on the same legal theory. Even though some factual variations may not defeat typicality, the requirement is meant to ensure that the named representative's

13

claims have the same essential characteristics as the claims of the class at large." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (internal quotation marks and citations omitted).

The Court is satisfied that the Plaintiff's First Amended Complaint adequately alleges that his claim is typical of the claim that the class members would have. It would arise out of the same conduct (automatically towing of vehicles even when another driver is present), and be based on the same legal theory (unlawful seizure). Whether the Plaintiff can ultimately prove the existence of an unconstitutional policy or custom is an issue for trial or a properly supported motion for summary judgment.

**4.**     *Rule 23(b)(3)*

Rule 23(b)(3) applies to most classes seeking monetary relief. The two overarching requirements are that common issues predominate and that a class action is the superior method for resolving the controversy. Fed. R. Civ. P. 23(b)(3). The Supreme Court has explained that the "predominance" and "superiority" requirements of Rule 23(b)(3) serve to limit class certification to cases where "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting Fed. R. Civ. P. 23 Advisory Committee Notes).

The Supreme Court has discussed predominance in broad terms, explaining that the Rule 23(b)(3) "inquiry trains on the legal or factual questions that qualify each class member's case as a genuine controversy," with the purpose being to determine whether a proposed class is

14

"sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. This "requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013). The Plaintiff must show that common evidence, as opposed to evidence that is individual to each member, could suffice to make out the alleged constitutional violations. *See Messner*, 669 F.3d at 818.

The proposed class in this case challenges what the Plaintiff contends is a commonly-applied policy or practice of the City Defendant. The nature and constitutionality of that practice will predominate over individual issues. *See Streeter v. Sheriff of Cook Cnty.*, 256 F.R.D. 609, 614 (N.D. Ill. 2009) ("When a proposed class challenges a uniform policy, the validity of that policy tends to be the predominant issue in the litigation.") (citing *Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344, 352 (N.D. Ill. 2008)); *see also*, *e.g.*, *Calvin v. Sheriff of Will Cnty.*, No. 03 C 3086, 2004 WL 1125922, at *4 (N.D. Ill. May 17, 2004) (holding that the "question of the validity of the Sheriff's policy" predominated over individualized questions because "the ultimate legal question is not whether jail personnel made erroneous reasonable suspicion determinations regarding each individual, but whether the Sheriff's policy avoided all such inquiry"). The allegations set forth in the First Amended Complaint plausibly suggest that the Plaintiff will be able to satisfy the predominance standard.

Rule 23(b)(3) also requires a court to assess whether class treatment is "superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The Defendant argues that a class action would not be superior to individual litigation. First, the Defendant argues that any individual with a claim would have sufficient damages to be

motivated to pursue his or her own litigation. At this stage of the proceeding, there is not yet any evidence of the damage value of any given unconstitutional tow and impound. The Defendant argues that, regardless of the amount of any recovery, the fee shifting provision of 42 U.S.C. § 1988 undermines the contention that a class action is preferable. However, the fee shifting statute would not increase the amount of damages actually recovered, and the case the Defendant cites in support of its proposition regarding fee shifting, *Mayo v. Sears, Roebuck & Co.*, 148 F.R.D. 576, 583 (S.D. Ohio 1994), is not on point. *Mayo* concerned a specific section of the Truth-in-Lending Act that involved the "purely personal remedy" of recission. *See James v. Home Constr. Co. of Mobile, Inc.*, 621 F.2d 727, 731 (5th Cir. 1980) (explaining that the notion of a class action under a statute giving a creditor the right to rescind, which he has "with each individual obligor" would "contradict what would seem to be the Congressional intent about the nature of this action"). The remainder of the Defendant's arguments regarding superiority relate back to its arguments regarding common issues, which the Court has already addressed. Whether there are other factors that would suggest that class treatment is superior, or not, can be developed later in the litigation. The Court does not find that this is one of those cases where "the complaint [makes] it clear that class certification is inappropriate" because the plaintiff will be unable to satisfy Rule 23. *Hioll*, 946 F. Supp. 2d at 829. However, in denying the Defendant's Motion to Deny Class Certification, the Court is not issuing a certification order pursuant to Rule 23(a)(1), or predicting the outcome of any motion requesting certification. The Court is ruling only that the First Amended Complaint plausibly states a claim upon which certification may be appropriate. The Plaintiff has not yet had an opportunity to conduct discovery to determine if the case is amenable to class certification. If the Plaintiff moves for class certification, he will not be

permitted to merely rest on his pleadings. Rather, he would be required to "affirmatively demonstrate his compliance with the Rule" and "prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*, 564 U.S. at 350.

**CONCLUSION**

For the reasons stated above, the Court DENIES the Defendant's Motion to Deny Class Certification [ECF No. 9], and GRANTS the Motion to Amend Complaint [ECF No. 16]. The Plaintiff is directed to file the First Amended Complaint — Class Action that was attached to his Motion to Amend.

SO ORDERED on September 20, 2016.

                                         s/ Theresa L. Springmann
                                         THERESA L. SPRINGMANN
                                         UNITED STATES DISTRICT COURT